NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHRISTINA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.P., H.B., *Appellees*.

No. 1 CA-JV 21-0290
FILED 1-18-2022

Appeal from the Superior Court in Maricopa County
No. JD37462
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1        Christina H. (Mother) challenges the superior court's order terminating her parental rights to her biological children M.P. and H.B. Mother argues the evidence does not support the substance abuse or time-in-care grounds, and also that termination was not in the best interests of the children. Because Mother has shown no error, the order is affirmed.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        Mother has a long history of abusing substances, including methamphetamine, marijuana and alcohol. In 2005, the predecessor to the Department of Child Safety (DCS) received multiple reports of Mother's substance abuse, instability and neglect of two older children. When Mother failed to remedy the issues, the court granted DCS' motion to terminate her parental rights to one of those children in 2009 and the other child was placed in the care of the child's father.

¶3        In 2017, shortly after M.P.'s birth, DCS received reports that Mother was abusing substances and neglecting the child. DCS provided services and referred Mother to community resources but did not file a dependency petition at that time.

¶4        When H.B. was born in February 2019, both Mother and H.B. tested positive for cocaine and marijuana. DCS implemented a safety plan, which Mother violated in May 2019 when she absconded with the children to Las Vegas, Nevada. DCS filed a dependency petition in May 2019 and the children were taken into care after being located in June 2019. In August 2019, the children were found dependent as to Mother when she did not contest the dependency allegations and the court adopted a family reunification case plan.

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

¶5          During the dependency, DCS provided Mother various services, including parent aides, facilitated visitation, drug testing, substance abuse assessment and treatment, psychological evaluations and counseling. For the two years following the dependency finding, Mother failed to successfully engage in services or address her substance abuse issues. Mother completed half of the parent aide sessions, which closed out unsuccessfully in March 2020. Mother later testified she left the parent aide program because "I'm not going to just do things that aren't going to better me." She also was inconsistent in participating in visits and showed concerning and aggressive behavior when she did participate. Mother was offered supervised visits in April 2020 but failed to consistently attend.

¶6          In June 2020, Mother again moved to Las Vegas and remained there during the rest of these proceedings. After the move, Mother had limited in-person contact with M.P. and H.B. In September 2020, Mother gave birth to O.B., apparently in Nevada. It does not appear Nevada has taken O.B. into care, and that child is not a part of this proceeding.

¶7          DCS referred Mother for urinalysis and hair follicle testing. For two years, Mother did not consistently test and was closed out for failure to participate. When Mother did test, she routinely tested positive for methamphetamine and marijuana. Her last test, in April 2021, was positive for methamphetamine. Mother regularly disputed her positive test results, claiming the tests were not accurate.

¶8          In July 2019, DCS referred Mother to a substance abuse treatment facility. Mother, however, stopped participating and was closed out unsuccessfully when she failed to attend group sessions or submit to drug testing. In May 2020, Mother checked into Lifewell Behavioral Wellness for treatment but left soon after without completing the program. Mother later testified she left Lifewell because she did not believe the treatment was helpful and because insurance would not cover the entire program. After moving to Las Vegas, Mother apparently participated and successfully completed a year-long substance abuse program, receiving a certificate in May 2021. However, while participating in that program, Mother only disclosed that she had issues with alcohol, not methamphetamine or other drugs. A March 2021 attempted placement of the children in Nevada through the Interstate Compact on the Placement of Children (ICPC) was denied by the State of Nevada, given Mother's positive drug tests and failure to test consistently.

¶9          During a psychological evaluation in July 2019, Mother disclosed a history of substance abuse and neglect. Mother was diagnosed

with an unspecified depressive disorder, borderline intellectual functioning and cannabis-stimulant and alcohol-use disorders. Mother's struggles, the psychologist's report noted, could place a child in her care "at risk for harm and can subsequently lead to behavioral problems and academic difficulties in the child." The report also noted that Mother "demonstrated minimally adequate parenting skills due to her substance abuse and addiction issues." The psychologist recommended Mother obtain treatment for substance abuse, complete parent aide services and engage in behavioral therapy to improve coping, communication, decision-making and parenting skills. Although engaging in counseling, Mother did not successfully engage in programs addressing substance abuse or treatment.

¶10 Given her lack of progress, in January 2021, the court granted DCS' request to change the case plan to severance and adoption. DCS' motion filed later that month sought termination based on substance abuse and 15-months time-in-care, also alleging that termination was in the children's best interests. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(3), -(B)(8)(c) and -533(A) (2022).[2] At the August 2021 severance adjudication, Mother and the DCS case manager testified, and the court received exhibits and heard arguments. After taking the matter under advisement, in September 2021, the court found DCS had proven both statutory grounds by clear and convincing evidence and had shown by a preponderance of the evidence that terminating Mother's parental rights was in the children's best interests. This appeal followed. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1) and 12-2101(A)(1) and Ariz. R.P. Juv. Ct. 103-104 (2022).

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

## I. The Superior Court Did Not Err by Terminating Mother's Parental Rights.

¶11 As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground set forth in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

### A. Mother Has Not Shown the Superior Court Erred In Finding She Was Unable Discharge Her Parental Responsibility Due to Her Chronic Substance Abuse.

¶12 To terminate parental rights for chronic substance abuse, DCS had to prove that: (1) Mother has a history of chronic abuse of controlled substances or alcohol; (2) Mother is unable to discharge parental responsibilities because of her chronic abuse of controlled substances or alcohol; and (3) there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period. *See* A.R.S. § 8-533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377 ¶ 16 (App. 2010) (noting substance abuse need not be constant to be considered chronic).

¶13 Mother argues that DCS did not show that she failed to remedy her substance abuse issues because: (1) she was able to discharge parental responsibilities to O.B. safely and properly; and (2) Mother successfully completed a year-long intensive outpatient substance abuse treatment program. The trial evidence showed that Mother had used methamphetamine and marijuana for 15 years, routinely tested positive for those substances and had her parental rights to an older child terminated. Mother's chronic drug use rendered her unable to effectively care for M.P., and, in 2019, M.P. and H.B. were taken into care when H.B. was born substance exposed.

¶14            Mother contends that reasonable evidence shows she was improving in Nevada and capable of discharging her parental responsibilities because the DCS case manager was unaware of any issues with O.B. Mother's care for O.B., however, fails to establish that she had conquered her substance abuse problems. In fact, in March 2021, Nevada child-welfare authorities denied DCS' attempt to place M.P. and H.B. in her physical care because Mother failed to "meet[] their standards." Among other things, Mother failed to routinely test for controlled substances, and, when she did test, was positive for methamphetamine and marijuana.

¶15            Mother's successful completion of an outpatient substance abuse program also fails to show her substance abuse issues had been remedied. Shortly before beginning that program, and three times during the program, Mother tested positive for methamphetamine. While Mother successfully completed the program, she failed to disclose to the clinicians that she used methamphetamine and continued to test positive for the substance. The nature of Mother's treatment focused solely on Mother's issues with alcohol, not controlled substances like methamphetamine.

¶16            The record shows Mother has a history of chronic substance abuse. Substance abuse was an issue in a prior dependency that led to the termination of her rights to an older child. For the two years after DCS removed M.P. and H.B. from her care, Mother refused to test consistently. When Mother did test, the results were often positive for methamphetamine or marijuana. Mother's length and frequency of substance abuse, the types of substances abused and her history of relapse support the court's finding that Mother has a chronic history of substance abuse. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 20 (App. 2016).

¶17            The trial evidence also supports the court's conclusion that Mother's chronic use of controlled substances renders her unable to effectively parent M.P. and H.B. Evidence detailed Mother's reluctance to make "any behavioral changes," including failing to complete treatment programs and denying the use of controlled substances while continuing to test positive. Trial evidence included a psychological evaluation detailing Mother's mental disorders and finding her "experiences continue to negatively impact all major areas of her basic and advanced functioning, including . . . cognitive functioning, decision-making abilities, her parenting abilities, her insight and judgment, motivation, and her emotional well-being." The evidence also noted concerns about Mother's inability to parent M.P. and H.B. because of mental disorders, instability and relocating residences multiple times, including absconding to Nevada and later

moving there. Mother has had ample time to show "she is willing to make the necessary behavioral changes needed in order to reunify with the children" but has failed to do so.

**¶18** This trial evidence supports a finding that her substance abuse will continue indefinitely. *See Raymond F.*, 224 Ariz. at 378-79 ¶ 26. Mother's failure to abstain from substances despite a pending severance is "evidence [she] has not overcome [her] dependence on drugs and alcohol." *Id.* at 379 ¶ 29. The trial record supports the superior court's finding that her drug use will continue for a prolonged indefinite period. A.R.S. § 8-533(B)(3). Because clear and convincing evidence supports the chronic substance abuse statutory ground, this court need not address Mother's arguments about the time-in-care ground. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

> **B.** **Mother Has Not Shown The Court Abused Its Discretion in Finding Termination of Her Parental Rights Was in the Children's Best Interests.**

**¶19** Mother argues that termination was not in the children's best interests because, although M.P. and H.B. are placed together in a potential adoptive placement, they would not be placed with O.B. in Mother's care. "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Ariz. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). The record is viewed in a light most favorable to upholding the best interests findings, and findings of fact will be affirmed if supported by reasonable evidence and inferences. *Id.* at 151 ¶¶ 18, 21.

**¶20** Mother argues that separating M.P. and H.B. from O.B. is not in the children's best interests. O.B., however, lives with Mother in Nevada and is not part of this proceeding. DCS' attempted placement of M.P. and H.B. with Mother (and O.B.) was denied by Nevada, given Mother's positive drug tests and resistance to participate in drug testing. Although Mother argues that "[p]lacement with siblings is *a factor* that can help make a particular adoption plan beneficial," such a placement is by no means *the factor*. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (stating children's interests in stability and security are the court's primary concern) (emphasis added).

**¶21** The superior court properly found M.P. and H.B. would benefit from termination because they are placed together in a potential adoptive placement. The court also found the children would be harmed if

termination was denied because "maintaining [the] parent-child relationship would be detrimental to the children because Mother has been unable to overcome her substance abuse issues and waiting for [Mother] to obtain sobriety and provide the children with a safe and stable environment will prevent the children from having permanency in a forever home." On this record, Mother has shown no abuse of discretion in the court's best interests findings. *See Alma S.*, 245 Ariz. at 149-150 ¶¶ 8-9.

## CONCLUSION

¶22  The order terminating Mother's parental rights to M.P. and H.B. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA